# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DALILA AGOSTO<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CIVIL NO.: 18-1271 (MEL) |

**OPINION AND ORDER**

Pending before the court is Dalila Agosto's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits under the Social Security Act. ECF Nos. 1, 8. Plaintiff challenges the Commissioner's finding that she is not entitled to disability benefits following a redetermination review. Plaintiff alleges that the administrative law judge erred in his decision finding that Plaintiff was not entitled to disability benefits, and that the redetermination review violated her Fifth Amendment procedural due process rights.

## I.     Procedural and Factual Background

On April 20, 2010, Plaintiff filed an application for Social Security benefits alleging that on October 23, 2009 ("the onset date"), she became unable to work due to disability. Tr. 15, 460-65.[1] Prior to becoming unable to work, Plaintiff was a drilling machine operator. Tr. 22. Plaintiff was found disabled since October 23, 2009 and notified in an award notice dated April 5, 2011. Tr. 235-40. For several years, Plaintiff received benefits under the Social Security disability insurance program. ECF No. 8, at 3. After an extensive fraud investigation conducted by the

---

[1] "Tr." refers to the transcript of the record of proceedings.

United States Department of Justice and the Social Security Administration's Office of the Inspector General ("OIG"), the Social Security Agency ("the SSA") notified Plaintiff, on December 23, 2013, that her benefits were suspended pending a redetermination of her entitlement to them. Tr. 770.

In the redetermination review, the SSA disregarded evidence submitted by treating neurologist Dr. José R. Hernández González ("Dr. Hernández") who had been criminally charged. Tr. 15, 193. On January 6, 2014, the SSA determined that Plaintiff was not disabled and notified Plaintiff in a letter. Tr. 248-50. On January 17, 2014, Plaintiff appealed the termination decision; the termination was affirmed. Tr. 254, 258-61. Thereafter, Plaintiff requested a hearing, which was held on June 22, 2017, before Administrative Law Judge Theodore Grippo ("the ALJ"). Tr. 15-24. On August 18, 2017, the ALJ issued a written decision finding that Plaintiff was not disabled during the relevant period. Tr. 23. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1-7. Plaintiff filed a complaint on May 9, 2018. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 8, 14, 15, 16.

## II. The ALJ's Redetermination Decision

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record

and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). In assessing an individual's impairments, the ALJ

considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

Rather than appealing an initial disability determination, Plaintiff appeals a redetermination decision. Under section 405(u), "The Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits . . . if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits." 42 U.S.C. § 405(u)(1)(A). "Similar fault" is involved in a determination if "an incorrect or incomplete statement that is material to the determination is knowingly made" or "information that is material to the determination is knowingly concealed." Id. at § 405(u)(2). The SSA may have reason to believe fraud or similar fault was involved through an investigation by the OIG. See, e.g., 42 U.S.C. § 1320(a)(8)(l).

During a redetermination review, the Commissioner "shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." Id. at § 405(u)(1)(B). The adjudicator may consider existing evidence and any new and material evidence that does not involve fraud or similar fault. See HALLEX I-1-3-25(A)[2]. A

---

[2] The Appeals Council defines its procedures and guiding principles in the Hearings, Appeals and Litigation manual, ("HALLEX"). While not entitled to deference, it illustrates the recommended approach ALJs and the Appeals

5

beneficiary may submit additional evidence if it is "new, material, and related to the time period at issue." Id. at I-1-3-25(C)(4)(3).

The adjudicator then determines, based on the eligible evidence, whether the beneficiary qualified for benefits at the time of the application. Id. at I-1-3-25(C)(3). Should the Commissioner determine "that there is insufficient evidence to support such entitlement, the Commissioner of Social Security may terminate such entitlement and may treat benefits paid on the basis of such insufficient evidence as overpayments." 42 U.S.C. § 405(u)(3).

**C. Legal Analysis: The ALJ's Redetermination Decision**

Consistent with section 405, the ALJ disregarded evidence submitted by Dr. Hernández dated from August 1, 2008 through October 28, 2013. Tr. 15. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. Tr. 18. Then, at step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. Id. At step two, the inquiry as to severe impairments resulted in the ALJ determining that Plaintiff had degenerative disc disease, as well as degenerative joint disease of the shoulders and knees. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20. Next, the ALJ determined that during the relevant period

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except for the following limitations. She could lift twenty pounds occasionally and ten pounds frequently. She could stand or walk for up to six hours in an eight-hour workday; she could sit up for up to six hours. She could occasionally climb, balance, stoop, kneel, crouch, and crawl. She could occasionally reach bilaterally overhead and forward.

---

Council take in redetermination cases. See Alicea-González v. Comm'r of Soc. Sec., Civ. No. 18-122, 2019 WL 4233925, at *2 (D.P.R. Sept. 6, 2019).

Tr. 20. At step four, the ALJ determined that through the date last insured, Plaintiff could not perform her past relevant work as a drilling machine operator. Tr. 22. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to a vocational expert. Tr. 39. The vocational expert testified, taking all of these factors into account, that an individual would be able to perform the requirements of the following representative occupations: rental clerk, information clerk, and counter clerk. Tr. 22-23. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that she was not disabled. Tr. 23.

### III. Legal Analysis

Plaintiff objects to the ALJ's final decision denying her disability benefits on several grounds. First, Plaintiff alleges that the ALJ erred in only considering evidence during the closed period and wrongfully interpreted medical evidence regarding Plaintiff's mental impairments. ECF No. 8, at 13, 21-22. Plaintiff also claims that the SSA's redetermination process violated her due process rights by not affording her the chance to challenge the findings of fraud in her disability application. Id. at 4-5.

**A. The ALJ's RFC Determination**

The ALJ erred, Plaintiff contends, in only considering evidence through the date of the prior favorable disability determination, April 5, 2011, rather than the date last insured, December 31, 2014. Id. at 6. The period of adjudication for redetermination proceedings is from the onset date through the date of the final determination of the individual's application for benefits. See HALLEX at I-1-3-25(C)(3). In the case at hand, Plaintiff was notified of the SSA's final determination of her disability application on April 5, 2011. Tr. 186, 235. As such, in the redetermination review, the ALJ could only consider existing evidence and any new evidence

7

that did not involve fraud through April 5, 2011. See HALLEX I-1-3-25(C)(3); I-1-3-25(C)(4)(c). The ALJ considered evidence through April 5, 2011, consistent with the period of adjudication for redetermination proceedings. See Tr. 18.

Second, Plaintiff claims that the ALJ erred in his interpretation of Plaintiff's self-reported functional report because the ALJ did not consider that Plaintiff "was feeling bad most of the time." ECF No. 8, at 22. Plaintiff alleges that her severe impairments "have the clinical and medical test results which prove that her impairments meet the severity and duration requirements to be found disabled." Id. at 22-23. Plaintiff, however, does not cite to specific evidence challenging the ALJ's determination.

In evaluating the severity of Plaintiff's medically determinable mental impairment, the ALJ rates the degree of functional limitation caused by said impairment. See 20 C.F.R. § 404.1520a(b)(2). The ALJ must assess the degree of functional impairment resulting from four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. Id. at § 404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. If the degree of limitation in each of the first three areas is evaluated as mild or better, and there are no episodes of decompensation, the ALJ will generally conclude that the claimant's mental impairment is not severe. See 20 C.F.R. § 404.1520a(d)(1).

First, the ALJ determined that Plaintiff had a mild restriction in the area of "activities of daily living." Tr. 19. The ALJ supported his assessment with statements Plaintiff provided in her disability report. Id. It was noted that Plaintiff performed activities such as cooking, sweeping, dusting, washing laundry, and caring for her younger daughter to include feeding and supervising bathing. Tr. 19, 498, 501. Second, the ALJ determined that Plaintiff had mild difficulties in the area of "social functioning." Tr. 19. This determination was supported by

8

Plaintiff's reports of being capable of driving and leaving the house alone, shopping for groceries, and paying bills. Tr. 19, 502-03. In assessing Plaintiff's concentration, persistence, or pace, the ALJ referenced Plaintiff's self-reported daily activities and determined that Plaintiff had mild difficulties because she did not need reminders to take her medication and she was able to finish tasks she started. Tr. 19, 500, 504-05. Lastly, Plaintiff did not cite to any evidence of repeated episodes of decompensation. Tr. 19. Substantial evidence supports the ALJ's determination that Plaintiff's mental impairment was non-severe. See 20 C.F.R. § 404.1520a(d)(1).

The SSA, however, asks for remand pursuant to sentence four of 42 U.S.C. § 405(g). ECF No. 14, at 11. Examining physical therapist Javier Espina performed a functional capacity evaluation indicating that Plaintiff was limited to sedentary work which is inconsistent with the ALJ's RFC finding that Plaintiff could perform light work. Tr. 20, 612. The SSA argues that "although physical therapists are not acceptable medical sources, the ALJ is required to consider physical therapists' opinion in determining the severity of a claimant's impairment." ECF No. 14, at 11.

Physical therapists are not "acceptable medical sources" for establishing physical or mental impairments. See 20 C.F.R. §§ 416.902(a), 416.921. However, "opinions from medical sources who are not acceptable medical sources . . . may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources." Id. at § 404.1527(f)(1). "The adjudicator generally should explain the weight given to opinions from these sources . . . when such opinions may have an effect on the outcome of the case." Id. at § 404.1527(f)(2). In the case at bar, physical therapist Espina's functional capacity evaluation is inconsistent with the ALJ's RFC determination. Because physical therapist Espina's evaluation

could have affected the ALJ's RFC determination, remand is appropriate for the ALJ to consider and explain the weight given to opinion evidence from physical therapist Espina. See id.

**B. Due Process**

Plaintiff contends that the SSA violated her due process rights by not permitting her to challenge the fraud allegations in her application. ECF No. 8, at 4-5. The SSA argues that the SSA's statutory mandate does not require an individualized finding of fraud and Plaintiff "already received the full and fair process that she was due." ECF No. 14, at 15.

Plaintiff raises a Fifth Amendment procedural due process claim. "[T]he interest of an individual in continued receipt of [disability] benefits is a statutorily created 'property' interest protected by the Fifth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). The Supreme Court set out a three-part balancing test in Mathews v. Eldridge the courts must use to evaluate procedural due process claims. Id. at 355. A court must weigh three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. The Mathews factors weigh as follows.

As to the first factor, the affected private interest, Plaintiff most likely has a substantial interest in continued receipt of disability benefits; erroneous termination may cause significant hardship. See id. at 342. To her detriment, Plaintiff did not offer examples of how significant the loss of her disability benefits was, but it can be assumed that the monetary loss affects her ability to provide for herself. Plaintiff does mention that the SSA sent payment demands compelling her to repay $43,096.00. ECF No. 8, at 23. Additionally, "there may be a loss of dignity when the government terminates disability benefits on the basis of fraud or similar fault involved in an

application." Picon-González v. Comm'r of Soc. Sec., Civ. No. 18-1016, 2019 WL 4187701, at *14 (D.P.R. Sept. 4, 2019). An association of fraud and the inability to challenge the government's declaration that there is "reason to believe" the beneficiary was involved in fraud may damage a person's reputation. See id. The SSA suggests that Plaintiff could mitigate the effects of termination by filing a new application. ECF No. 14, at 16. Filing a new application for disability benefits is not an accessible mitigation method because beneficiaries must restart the entire process. Transcripts may be in the thousands of pages, claimants fill out detailed forms, and applicants must track down and turn over a plethora of medical records. See Picon-González, 2019 WL 4187701, at *14. Indeed, "[a] chance to start over cannot erase loss caused by the violation of one's constitutional rights." Id. at *16.

As to the second factor, risk of erroneous deprivation of such interest, the SSA claims that there are adequate procedural safeguards regarding the property interest at stake here. ECF No. 14, at 17-18. First, the SSA suggests that Plaintiff could submit additional evidence to substitute for the excluded evidence. Id. at 17. Filing new evidence may be complex and difficult. Assembling medical records from years or decades prior is onerous. See Alicea-González v. Comm'r of Soc. Sec, Civ. No. 18-122, 2019 WL 4233925, at *11 (D.P.R. Sept. 6, 2019). "Many beneficiaries provide the only copies of their medical records to representatives during the initial claim, others may have lost their records, physicians may have destroyed old reports, and some plaintiffs may have foregone second opinions due to trust in their primary physician." Id.

Second, the SSA alleges that another safeguard is "an impartial ALJ conducting a new hearing on the evidence." ECF No. 14, at 18. In this case, the hearing is not a robust safeguard because "the hearing is restricted to the accuracy of the admissible medical records and the

11

SSA's conclusions." Rivera-Cepeda v. Comm'r of Soc. Sec., Civ No. 18-1092, 2019 WL 4201573, at *10 (D.P.R. Sept. 5, 2019). There may be a risk of erroneous deprivation because beneficiaries do not receive notice of the factual determinations detailing the reason to believe fraud or similar fault was involved in their application, and so they cannot challenge the type of evidence disregarded. See Alicea-González, 2019 WL 4233925, at *11-12. "When a party is improperly handicapped in disputing a preliminary issue, the overall outcome is also tainted." Hicks v. Comm'r of Soc. Sec., 909 F.3d 786, 798 (6th Cir. 2018). The risk of erroneous deprivation is "too high" any time a citizen is deprived of "a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker." Id. at 799; Alicea-González, 2019 WL 4233925, at *11.

As to the final Mathews factor, the government's interest, the SSA contends that if the Commissioner was required to make a specific finding of fraud or similar fault in all of the cases affected by Dr. Hernández, "there would be substantial delay in the Commissioner's ability to process these cases." ECF No. 14, at 20. But, the SSA's claim is unpersuasive because it is unclear "why an ALJ would be unable to review OIG evidence in addition to the complex and lengthy records they already endure." Rivera-Cepeda, 2019 WL 4201573, at *11. Also, the additional burden would most likely fall on the OIG investigators who would be required to explain why there is "reason to believe fraud or similar fault" was involved in an individual's application. Id.

The SSA also raises the issue that requiring specific findings in every redetermination case would thwart independent authorities, like the Department of Justice, of their authority "to identify and prosecute program fraud and render findings that can themselves serve as the basis for redeterminations." ECF No. 14, at 20. While requiring specific findings would be an

additional responsibility, it would not "strip away authority to investigate or prosecute." See Picon-González, 2019 WL 4187701, at *16.

On balance, the Mathews factors favor Plaintiff whose disability benefits were terminated after this particular OIG investigation led to a redetermination review. See Alicea-González, 2019 WL 4233925, at *11. The administrative burden on the SSA cannot stand up to the risks of erroneous deprivation. Plaintiff was denied the opportunity to challenge the OIG investigation and the application of the investigation's findings to her own medical record. See id.

## IV. Conclusion

Based on the foregoing analysis, the court concludes that the Fifth Amendment Due Process clause requires the SSA to give Plaintiff the opportunity to challenge the application of fraud to her case and the consequent disregard of entire medical reports prepared by Dr. Hernández. See Alicea-González, 2019 WL 4233925, at *11. The ALJ was also required to explain the weight given to physical therapist Javier Espina's opinion in determining the severity of Plaintiff's impairments. The Commissioner's decision denying Plaintiff's disability claims is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 20th day of November, 2019.

s/Marcos E. López  
U.S. Magistrate Judge